The next case on the calendar is Collin v. Metro-North. Yes, Your Honor, I'm John Siskopoulos. I'm here for Mr. Colon and Ms. Davis. May I reserve three minutes for rebuttal? Yes, you may. Well, am I ready to go? Okay. This is a very sad case in many respects because Mr. Colon, as we all know, and I believe Mr. Hickey agrees, was tragically electrocuted at the Metro-North railroad tracks, specifically the catenary, which was an electrified pole. And I sincerely believe this was an avoidable tragedy. Mr. Colon has had a lot of bad luck in his life. Unfortunately, he was born and shortly thereafter contracted meningitis, so he had a limited mental capacity. And he's a person who, unfortunately, because of a sign that is unreadable and completely undecipherable, he simply could not read the sign, which would have said, do not come here, it's a danger of electricity. This case, of course, has many different ebbs and flows to it, but I simply believe this case comes down to a sign. But that's a jury. I mean, you made that argument to the jury also, right? Well, the jury, I think- Other problems. Well, I'll get to that in a second, but I think the case really comes down to this illegible sign that no person could read this sign. That's why this man did not understand the danger that was in front of him. This sign is not readable by any measure or any person. Now, with regard to the jury, I think the jury got it wrong because I think the jury got the wrong jury instructions. Let me explain to you why. I scoured the United States, every circuit court, every state court. The restatement 335 does not say dangerous proximity anywhere in any state court, any federal court, and it certainly doesn't say that in the restatement. This judge concocted his own legal standard despite the fact that in summary judgment in his prior ruling, which should have been the ruling that controlled the parties- Can I just ask- Yes, Your Honor. Just at the start, the dangerous proximity, I mean, the jury made three determinations, that your client failed to prove his injury was caused by a serious hidden danger, that the defendants had knowledge of constant intrusion in the area, and that the injury was caused because of a failure reasonably to warn. And this particular instruction, if I'm understanding it correctly, only relates to the second of those jury findings. With all due respect, it's found in instruction number 2, 3, and 5. The wrongful dangerous proximity instruction infects every single instruction, and including the special interrogatories, because they underlie the wrongful instructions. Now, let me explain to you why I think it's so dangerous. So, the dangerous proximity instruction, and I want to simplify this. You're all federal I would imagine, but I'm going to try to simplify it again. I showed you a picture, and I'm going to show you a mental image I have. 337 is like a triangle. Dangerous proximity is the higher point of the triangle, but you don't have to prove constant intrusion. 335 is the bottom of the triangle. It's a much wider limited area, which the judge said was a one-mile radius, but you have to prove constant intrusion. What the judge did was he took a 337 instruction and inserted it in 335. He ruined the case for the plaintiff. It's like somebody saying, I prove first-degree murder because I had reckless indifference. Well, that's manslaughter. That's not first-degree murder. The judge got a term from another restatement, but he got the law wrong. I'm sorry. I want to go back to Judge Livingston's question. The second of the five elements that the jury was required to find is whether the injury is caused by a serious hidden danger. The element is put to the jury is that on the Dayton question, Mr. Colon suffered injuries that were caused by an artificial condition on the property that Metro-North created or maintained access to, that Metro-North knew was likely to cause death or serious bodily injury, and that presented a hidden danger that Metro-North had reason to believe the trespassers would not realize or discover. The jury found that not proven. Now, where does the dangerous proximity issue come into whether Metro-North maintained access to the property that Metro-North knew it was likely to cause death or serious bodily harm? I would think that's an obvious one, or most likely that it wasn't a hidden danger because it's high-voltage electric wires that you're climbing up into. Well, first of all, with the dangerous proximity, Your Honor, if you read the instructions in their totality, he constantly says they had to prove constant intrusion in the dangerous proximity, which the judge specifically said at or near the wires. That goes to constant intrusion. Where does the constant intrusion have to be? I believe that constant intrusion would be where the judge said initially, which would be a one on the catenary. Yeah, but what does that have to do with whether there was or wasn't a serious hidden danger anywhere here? Because nobody can see electricity, Your Honor. It's invisible. You cannot see it. The whole catenary gets electrified. If he touched it, he could have been shocked. Of course, the higher you go up, the more dangerous it gets. Nobody can see electricity. So high-voltage electric wires are a hidden danger on somebody's property? Well, he wasn't shocked at the wires, Your Honor. He was shocked under the wires. And secondly, as my colleague explained, there are telephone wires there and cable wires. Those don't shock you. How would he know what wires would shock him and what wires would shock him? Well, that's a good argument to a jury, but the jury didn't find it. The jury got the wrong jury instructions. This judge became proser on torts. Judge Meyer, with all due respect to him, he decided to create his own restatement there. You can't win a case where you have to prove constant intrusions 45 feet in the air. That's what the judge wanted them to prove at the end of the trial. It's absurd, because what happens if— And if that was the only thing the jury didn't find, maybe there would be an argument. If you read my brief, the instructions on the special— I did read your brief, Mr. Siskopoulos, and I appreciate you're not interrupting me when I'm trying to ask you a question to understand what your argument is. The question, again, is, sure, if there was some error in the instruction with respect to where the constant intrusion has to be, that would affect the jury's verdict on that element. The question is, how does that affect the jury's verdict, whether it was correct or incorrect, in your view, with respect to that second element? Well, the second element, first of all, the special interrogatories are not factual questions. They're legal questions, which, according to the law that we cite, they have to be factual for special interrogatories to have some special significance, which they did not. Also, with regard to the dangerous proximity element, the one thing here I think gets confused, which my colleague's done a good job, is to say, basically, Mr. Colon did this to himself. The problem is, they never got to comparative negligence. We'll never know if the jury thought he was comparative negligent. What we do know is, I believe the jury had a smaller radius that was anticipated. And I want to say one other thing about discovery. If the judge had said, it's going to be at the tower, Mr. Rush probably would have done discovery at the tower. You can't go into trial and say, it's going to be at the base, and then, during midstream, say, by the way, it's going to be all the way up the tower. He would have probably prepared for his case in a much different manner. And I think that's why was also very unfair to the plaintiffs. Thank you, Your Honor. Good morning. May it please the court. My name is Robert Hickey, and I practice law with Ryan Ryan DeLuca in Connecticut. After a two-week trial in which the plaintiff called over 20 witnesses, seven of whom were experts, Judge Meyer submitted interrogatories to the jury with a general three out of five essential elements of their claim. Those interrogatories and the answers to them, which are found at page 1383 of the appendix and at page 10 of our brief, are dispositive because they moot any potential error that the plaintiffs have raised in this appeal. Specifically, the plaintiffs failed to prove, as Your Honor has just mentioned, that the injury was caused by a hidden danger. And for context, the theory upon which this case was presented to the jury was that the hidden danger was the potential for static electricity to be present around the high-tension wires, not that the high-tension wires themselves were the danger because we had . . . Without touching the wires, you would be electrocuted. Correct. We had argued earlier in the case on summary judgment that high-tension wires are an open and obvious danger. And Judge Meyer said, well, the way this case has developed, and based on the evidence at the time, there is this potential for static electricity, which if Mr. Colon encountered it, could have caused him to fall onto the wires and become electrocuted. The jury found the answer to that, no, that he had not proven it. And there was evidence that he may have simply become disoriented by the height that he was at. There was evidence that there was water on his shoes. It's just there was countervailing evidence, not that we hadn't a burden of proof, but the jury found the plaintiff did not prove that it was static that caused him to fall onto the wires and become electrocuted. In addition to that, the jury found that the sign was inadequate. It did fail to warn of the danger, but they also then found in the very next interrogatory that that failure was not a cause of Mr. Colon's injury. I would agree it's a tragic case, severe injuries, but after a two-week trial during which all of this evidence was presented to the jury, and we have these interrogatories, which are contemplated under Rule 49, there is no basis whatsoever to overturn what the jury did in this case. Each of . . . And discovery might have been conducted differently if he had been apprised of it earlier. Right. So let me address that. So during the discovery phase of the case, we argued on behalf of Metro-North that the plaintiff's burden here was going to be to prove constant intrusion near the dangerous condition. They had asked for any electrocutions from New Haven to Grand Central Terminal, and we said that's ridiculous, and Judge Meyer agreed with us that electrocutions, for instance, 40 or 50 miles down the right-of-way would be irrelevant. So Judge Meyer gave a one-mile in either direction limit on what we would have to produce. At the summary judgment stage, Judge Meyer wrote in his decision the because there was some graffiti which suggested that trespassers had gone up, that's in quotes, the catenary tower. So there was no prejudice here. This particular tower. This particular tower. There was some low-level graffiti. Again, at the summary judgment stage, Judge Meyer found that that was enough to defeat summary judgment. There was an inference that could be made there. Clearly, it was insufficient later to carry the burden at the time of trial. So the first four issues raised by the plaintiff are literally all rendered moot by the findings, whether there was FRA reports that weren't admitted, spoliation of evidence, all of that is rendered moot because they all go to the element of constant intrusion. If we give the plaintiff's constant intrusion, if we assume that there was some error, the verdict is still unassailable on the failure to prove the other two elements. And then lastly, what that leaves the plaintiff's with in this case is the claim that Judge Meyer was unfair, was biased. We counter every single allegation of that in our brief. I won't belabor it here. The standard is clearly that the plaintiffs were not entitled to a perfect trial. They were entitled to a fair trial. This was a two-week trial, which was difficult on all the parties, and I'm sure on Judge Meyer. I'll leave it to our brief as far as how he addressed each of those things. But Judge Meyer's actions, even in hindsight, which is always easier for people who are not in the heat of the litigation, come nowhere close to the standard, which is to show that the plaintiffs didn't get a fair trial in this matter. Unless your honors have questions, that's all I have. So I'd also like to discuss the spoliation issue. Counselor just said that they weren't able to prove constant intrusion at the tower. And one of the things that precluded this from happening is the defendants here took a bunch of rock and spilled it over just prior to the inspection by the investigator and the expert who was going to check to see the constant intrusions at the site. That is classic spoliation. Of course, they were notified of the litigation. They knew that they had to preserve the site for testing. And even if they had to pour the rock, the commonsensical thing would be, listen, counselor, we're going to do something soon to the site. I suggest you bring your expert here because if you're going to prove constant intrusions, you have to give the person the opportunity to prove constant intrusions. If you throw, I believe it was tons and tons of rock, which you cannot prove constant intrusion if the site has been spoliated by the defendants. This was some three years after the accident, correct? Well, if you look at the record, there was back and forth between the parties trying to set up a date with the expert. And this was done during their give and take to set up an inspection with the site. With regard to the FRA reports, which I find to be kind of confusing by the judge, you have to understand that the judge allowed these in prior to trial. He changed his mind one week before trial. He said they were admissible evidence. And then he decides it's not admissible evidence without any basis in the law, either procedurally or substantively. And let me explain. The procedural rules explain that you cannot file for a motion for consideration unless it's within seven days. They filed it more than 20 days late. It should have never been heard. And then substantively, all their case law, which was nothing more than a regurgitation of their prior arguments, was basically a products liability case, which we explain in our brief. This would have went to notice because they're feigning, to a certain extent, innocence, like we never knew that this happened before. But there was several shock burn incidences at those towers. And my question to you is this, because this is the standard that they were able to pull a fastball on the trial judge. Because if you think about it, here's what they're saying. We don't have to put up a sign until we know somebody's either dead or maimed. That should not be the standard. This young man has his life destroyed. He is now essentially a vegetable. He cannot function as a normal person. His marital relationship is finished. He is a double amputee. Can I ask you, and this is I think my final question at least, the series of FRA casualty reports, when I look at them, a good portion of that material seems to involve injuries to railroad employees that did not involve electricity. So what portion precisely of those reports do you say you were harmed by their exclusion? Well, first of all, can I have more time? Okay, thank you. The FRA reports, if you read them, the judge said in his own conclusion during his decision, he says that they look like they are shock burned. My point is, Mr. Rush had a right to hear his case, and if they had proof otherwise, they could have called their own witnesses. And one other thing about these FRA reports, which are required to be accurate and complete, you know what the FRA report says for Omar Colon, his injury? Electrocution. Thank you very much. Thank you both. We'll take the matter under advisement.